

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00101-CR

REGINA ROCHELLE GREATHOUSE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-23-28729

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

A Fannin County jury convicted Regina Rochelle Greathouse of delivery of less than one gram of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Supp.). After Greathouse pled true to the State's punishment enhancement allegations, the jury assessed a sentence of eight years' imprisonment and a $2,500.00 fine. In her sole point of error on appeal, Greathouse argues that the evidence was legally insufficient to support the jury's finding of guilt. Because we find the evidence legally sufficient, we affirm the trial court's judgment.

## I. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Here, the State alleged that Greathouse knowingly delivered less than one gram of methamphetamine "by actual transfer, or offer to sell" the drug to a confidential informant.

## II. The Evidence at Trial

At trial, Robert Williams, an investigator for the Fannin County Sheriff's Office, testified that Kayla Moore, who had pending criminal charges, agreed to work as an informant. According to Williams, Moore chose Greathouse to be the target of a "controlled buy." Williams testified that Moore's boyfriend, Jonathan Kitchens, was allowed to accompany Moore because she was afraid to conduct the transaction by herself. Williams clarified that Kitchens also had pending charges but did not qualify to be an informant due to his criminal history. Even so, Kitchens agreed to assist because he and Moore, who had pending child endangerment charges against them, "were trying to get [their] kids back."[1]

Williams testified that Moore texted Greathouse before the controlled buy and that Greathouse responded via text message that she had forty dollars's worth of methamphetamine. Text messages from Moore's cell phone showed that Greathouse instructed Moore where to meet

---

[1]By the time of trial, Moore and Kitchens were no longer dating.

3

her to complete the transaction. Williams met with Moore and Kitchens around 7:00 p.m. to go over the plan for the controlled buy and to search their persons and vehicle to confirm the absence of any drugs. Williams gave Moore a camera to record the transaction and currency to purchase the methamphetamine. Both Moore and Kitchens confirmed that they had no methamphetamine before the controlled buy.

The recording of the controlled buy, which was admitted into evidence, shows that Kitchens and Moore arrived at Greathouse's designated meeting spot. Once there, Moore exited the vehicle driven by Kitchens and approached the driver's side door of Greathouse's vehicle. The recording shows Greathouse and Moore chatting briefly before Greathouse grabbed money that appeared out the open driver's side window and placed it in her pocket. Although the recording does not depict Greathouse handing the methamphetamine to Moore due to the camera's angle, Kitchens testified that Moore returned to his vehicle with a small plastic bag containing methamphetamine and "set it on the console" as they drove to meet again with Williams. Moore also said she received methamphetamine from Greathouse in exchange for the forty dollars. Williams testified that he met with Moore and Kitchens after the controlled buy and Moore "turned over the methamphetamine."

According to Williams, a field test of the drugs was "presumptive positive" for methamphetamine and was submitted to the Texas Department of Public Safety (DPS) Crime Laboratory in Tyler, Texas, for confirmation. Micaela Steward, a forensic scientist employed by the DPS crime lab, testified that her analysis of the substance showed that it contained 0.67 grams of methamphetamine.

After hearing that evidence, the jury convicted Greathouse of delivery of less than one gram of methamphetamine.

## III. Legally Sufficient Evidence Supports the Jury's Verdict of Guilt

Greathouse argues that the evidence presented at trial was not sufficient to support the jury's verdict.[2] Specifically, Greathouse argues that testimony from Kitchens and Moore was not credible because they "were highly motivated to get favorable treatment from law enforcement because their own charge they were working off was one that kept them from being able to see their children."[3] That argument challenges the credibility of the witnesses, but the jury is "the sole judge of the[ir] credibility." *Auld v. State*, 652 S.W.3d 95, 103 (Tex. App.— Texarkana 2022, no pet.) (quoting *Williamson*, 589 S.W.3d at 297).

The issue of Moore's and Kitchen's credibility was the subject of thorough cross-examination and was fully litigated before the jury. In reviewing the recording of the controlled buy, which clearly depicts Greathouse's face, the jury could have determined that Moore did not give Greathouse money without receiving something in exchange. Moore's text messages with Greathouse, in addition to her testimony, demonstrated that Greathouse gave Moore the methamphetamine in exchange for money. Williams and Kitchens also testified that Moore had the methamphetamine only after the controlled buy.

Viewing all the evidence in the light most favorable to the jury's verdict, we find it sufficient to show, beyond a reasonable doubt, that Greathouse delivered less than one gram of

---

[2]Greathouse raises no complaint alleging that Moore's testimony was not sufficiently corroborated.

[3]Williams testified that all informants are notified "that no promises will be made to the disposition of their current charges" but that "their efforts w[ould] be reported to the district attorney's office."

methamphetamine to Moore.  Accordingly, we find the evidence legally sufficient and overrule

Moore's sole point of error.

## IV.    Conclusion

We affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     December 11, 2024
Date Decided:       December 19, 2024

Do Not Publish